UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GERRY TOMLIN,                                  Case No. 1:12-cv-957
    Plaintiff,                             Dlott, J.
                                               Litkovitz, M.J.
    vs.

COMMISSIONER OF                                **REPORT AND**
SOCIAL SECURITY,                               **RECOMMENDATION**
    Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 14), the Commissioner's response in opposition (Doc. 19), and plaintiff's reply

memorandum (Doc. 22).

**I. Procedural Background**

Plaintiff filed an application for DIB in July 2009, alleging disability since July 15, 2009,

due to achalasia.[1] (Tr. 233). Plaintiff's application was denied initially and upon

reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before

administrative law judge (ALJ) Larry Temin. (Tr. 32-101). Plaintiff appeared at the hearing

with a non-attorney representative. Plaintiff, his wife, a medical expert (ME), and a vocational

expert (VE) also appeared and testified at the ALJ hearing. On July 26, 2011, the ALJ issued a

decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals

---

[1] Achalasia is a disorder of the tube that carries food from the mouth to the stomach (esophagus), which affects the
ability of the esophagus to move food toward the stomach.
http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001313/ (last accessed November 15, 2013).

1

Council was denied, making the decision of the ALJ the final administrative decision of the

Commissioner.

## I.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.   42 U.S.C. § 423(d)(1)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy.   42 U.S.C. §

423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

2

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.   *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).   Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.   *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B.   The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since July 15, 2009, the
> alleged onset date (20 C.F.R. 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: chronic abdominal pain, status
> post surgeries in 1981, 2003, and 2007 with a history of achalasia; status post thoracotomy for a benign lung mass; and a mood disorder (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets
> or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).   Specifically, the [plaintiff] can perform work activity except as follows: The [plaintiff] can lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently.   He can stand and/or walk for up to 6 hours in an eight-hour workday, and can sit for 6 hours in an eight-hour workday.

He can only occasionally stoop, kneel, crouch and climb ramps/stairs. He should not crawl, climb ladders, ropes, or scaffolds, use vibratory tools or power tools, operate automotive equipment, work at unprotected heights, or work around hazardous machinery. The [plaintiff] is able to remember and carry out detailed but uninvolved instructions. His job should not require an inflexible work pace or more than ordinary and routine changes in work setting or duties. The [plaintiff] cannot make complex work-related decisions.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] . . . 1958 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because
using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act,
from July 15, 2009, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 18-25).

---

[2]Plaintiff has past relevant work as a production supervisor, which he performed at a medium level. (Tr. 24).

[3]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative occupations such as fast food worker (22,000 jobs locally and 2,600,000 jobs nationally); cashier II (8,000 jobs locally and 1,270,000 jobs nationally); and unskilled counter and rental clerk (1,000 jobs locally and 170,000 jobs nationally). (Tr. 24-25).

4

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of*

*Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson*, 378 F.3d at 545-46 (reversal

required even though ALJ's decision was otherwise supported by substantial evidence where

ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby

violating the agency's own regulations).

5

D. **Specific Errors**

The pertinent medical findings and opinions have been adequately summarized in plaintiff's Statement of Errors and will not be repeated here. (Doc. 14 at 2-4). Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, plaintiff argues that: (1) the ALJ failed to account for plaintiff's breathing impairment in the ALJ's decision; and (2) the ALJ improperly analyzed plaintiff's credibility, which led to an erroneous RFC finding. (Doc. 14).

**1. The ALJ did not err by failing to impose limitations due to a breathing impairment.**

Plaintiff states as his first assignment of error that the ALJ erred by failing to include any limitations in the RFC to account for plaintiff's breathing impairment, despite evidence showing that plaintiff had a portion of his lung removed and pulmonary function test results demonstrating plaintiff had a "moderately severe combined obstructive and restrictive pulmonary disease with a bronchospastic component." (Doc. 14 at 6-7, citing Tr. 934-35). Plaintiff alleges that at a minimum, the ALJ should have (1) included restrictions in the RFC finding against exposure to extreme temperatures, and (2) included "a limitation on the degree of exposure to pulmonary irritants, including fumes, dusts, odors, and gases." (*Id*. at 7). Counsel does not cite any medical opinion evidence or other record evidence in the Statement of Errors to support these suggested limitations.

In response, the Commissioner argues that the ALJ explicitly considered the objective medical and other record evidence related to plaintiff's lung condition and related functional abilities. (Doc. 19 at 3-4, citing Tr. 18-23). The Commissioner contends that none of this evidence, including the assessments of the physicians of record, shows that the ALJ erred by

6

fashioning an RFC finding that limited plaintiff to a restricted range of light work, without the additional accommodations urged by plaintiff.

In the reply memorandum, plaintiff argues that there is additional evidence beyond the pulmonary function study cited in the Statement of Errors that relates to his breathing impairment and purportedly demonstrates that plaintiff's ability to breathe is restricted by adhesions in his chest and abdominal cavity. (Doc. 22 at 2-3, citing Tr. 360, 363). Plaintiff also asserts that he suffers from "mild fibrosis and acute and chronic inflammation" of the left lung, and that "the pathological signs of inflammation in plaintiff's lung demonstrate the response Plaintiff's body has to pulmonary irritants." (*Id*. at 2). Finally, plaintiff contends that he explained that he was placed on "light duty" after surgery on his right lung in 1997 (Tr. 251) and he became even more functionally limited after his more recent surgeries in 2007 and 2009, so that a reduced range of light work cannot sufficiently accommodate his breathing impairment.[2] (*Id*.).

The ALJ found that plaintiff suffers from a severe lung impairment of "status post thoracotomy[3] for a benign lung mass." (Tr. 18). The ALJ acknowledged in his decision that plaintiff had undergone a surgical lobectomy in 1997 that resulted in thoracotomy syndrome.[4] (Tr. 21). The ALJ did not, however, include environmental restrictions in limiting plaintiff's RFC to less than a full range of light work.

---

[2] Plaintiff cites an October 28, 2009 Report of Contact, which states that plaintiff reported after his upper right lobe was removed in 1997 due to a mass, he could no longer lift up to 100 pounds and he was given job duties that did not require the ability to lift heavy objects; if he had to lift something that weighed more than 25 pounds, he had someone help him lift the object. (Tr. 251). He reported getting short of breath if he tried to lift heavy objects, and he stated that he was made a lead person before he left his job so that he would not have to lift "heavy objects." (*Id*.).

[3] A thoracotomy is an incision of the chest wall. http://medical-dictionary.thefreedictionary.com/thoracotomy (last accessed November 15, 2013).

[4] Chronic post-thoracotomy pain syndrome is defined as "pain that recurs or persists along a thoracotomy incision for at least 2 months following surgery." http://www.cmaj.ca/content/177/9/1027.1.full (last accessed November 15, 2013).

The ALJ did not err in this regard. The existence of a severe lung impairment is not sufficient in and of itself to require the inclusion of environmental limitations in the RFC finding. *See Clayburn-Day v. Commissioner of Social Sec.*, No. 1:10-cv-859, 2012 WL 423735, at *1 (S.D. Ohio Feb. 9, 2012) (a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment) (citing *Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990)). *See also Dillon v. Astrue*, 1:09-cv-896, 2011 WL 900987 (S.D. Ohio Feb. 14, 2011) (Report and Recommendation) (Bowman, J.), *adopted sub nom., Dillon v. Comm'r of Soc. Sec.*, 2011 WL 901789 (S.D. Ohio Mar. 14, 2011) (Barrett, J.) ("However, a diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual.") (citing *Young,* 925 F.2d at 151); *Wallace v. Astrue,* No. 3:08-cv-405, 2009 WL 6093338, at *8 (S.D. Ohio Dec. 1, 2009) (Report and Recommendation) (Merz, M.J.), *adopted,* 2010 WL 1133436 (S.D. Ohio Mar. 22, 2010) (Rice, J.)). The ALJ was not required to include environmental restrictions in the RFC to account for plaintiff's lung impairment absent objective evidence supporting such restrictions. The record does not contain such evidence. Instead, the record includes a number of medical opinions by treating, examining and reviewing physicians, none of whom assessed restrictions against exposure to extreme temperatures or pulmonary irritants.

Dr. James T. Brockman, M.D., plaintiff's primary care physician, completed a statement of functionality on behalf of plaintiff's disability carrier on September 2, 2009. (Tr. 598-99). Dr. Brockman reported that based on plaintiff's diagnoses of achalasia and left-sided abdominal pain, as well as plaintiff's subjective symptoms of left-sided abdominal pain, plaintiff could sit for a total of one and one-half hours and one-half hour at a time; stand for six hours total and six

8

hours uninterrupted; and walk for an unlimited amount of time. He could frequently lift/carry up to 10 pounds; frequently kneel/crouch; occasionally bend at the waist; and occasionally reach above his shoulder and below his waist/desk level. (Tr. 598-99). Plaintiff had no driving restrictions. (Tr. 599). Dr. Brockman imposed no additional restrictions or limitations, including environmental restrictions. He noted that implantation of a stimulator was planned. (Tr. 598).

Consultative examining physician Dr. Jennifer Wischer Bailey, M.D., examined plaintiff on November 11, 2009. (Tr. 925-37). Spirometric testing showed reduced FVC and FEV1 values (Tr. 933-37) and were interpreted by Dr. Martin Fritzhand, M.D., as showing "Moderately severe combined obstructive and restrictive pulmonary disease with bronchospastic component." (Tr. 935). Dr. Bailey diagnosed plaintiff with chronic abdominal pain with history of total gastrectomy, shortness of breath, and an acute boxer's fracture of the left hand. (Tr. 931). On physical examination, plaintiff had mild abdominal tenderness, extensive scarring consistent with prior surgeries, hyperactive bowel sounds, and a mass which could be scar tissue. (Tr. 931). The rest of the exam was "completely normal." (*Id*.). Dr. Bailey opined that plaintiff appeared capable of performing "a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects," and she found plaintiff would had "no difficulty reaching, grasping, and handling objects." (*Id*.). Dr. Bailey found there were "no environmental restrictions." (Tr. 931-32).

State agency physician Dr. Eli Perencevich, D.O., reviewed the file on January 13, 2010, and completed a physical RFC assessment. (Tr. 979-86). He opined that plaintiff could lift/carry and push/pull up to 20 pounds occasionally and 10 pounds frequently; stand/walk about

six hours in an eight-hour workday; and sit about six hours in an eight-hour workday.  (Tr. 980).

He limited plaintiff to occasional crouching or crawling.  (Tr. 981).  Dr. Perencevich imposed

no environmental restrictions.  (Tr. 983).

On January 19, 2010, state agency physician Dr. Sarah Long, M.D., reviewed the file and

issued an addendum to Dr. Perencevich's assessment to address the functional capacity

assessment of Dr. Brockman.  (Tr. 987).  Dr. Long declined to give "controlling weight" to Dr.

Brockman's functional capacity assessment completed in September 2009.  (*Id*.).  Dr. Long

found that the current examination showed no problems with sitting, standing, or walking, and no

permanent limitations on hand strength.  (*Id*.).  In May 17, 2010, state agency physician Dr.

Dimitri Teague, M.D., reviewed the evidence of record and affirmed Dr. Perencevich and Dr.

Long's assessments as written.  (Tr. 1108).

Dr. Henry N. Maimon, M.D., a gastroenterology specialist, testified as an impartial

medical expert at the administrative hearing.  (Tr. 55-85).  After reviewing plaintiff's medical

records and explaining his achalasia condition, Dr. Maimon testified that the etiology of

plaintiff's pain was not achalasia.  (Tr. 58-64).  Instead, plaintiff's issue was one of possible

incapacity due to "pain," the etiology of which was unclear.  (Tr. 61-64).  Dr. Maimon did not

deny the existence of plaintiff's pain, but he found no "good explanation" for the pain.  (Tr.

76-77).  Dr. Maimon explained that plaintiff's pain and symptoms were "way out of proportion

to the objective findings" (Tr. 68) and were not the usual result of the procedure plaintiff had

undergone.  (Tr. 83-84).  (*See also* Tr. 61-63, 67, 80-81).  He opined that the pain plaintiff

complained about was possible but "[a]bsolutely not" likely.  (Tr. 84).  Dr. Maimon surmised

that plaintiff could be experiencing pain from his lung resection (Tr. 81-82), but he testified it

was not likely. (Tr. 82-84). Dr. Maimon did not testify as to any environmental restrictions resulting from a lung impairment, and he agreed with the RFC assessment of Dr. Perencevich, who imposed no environmental restrictions. (Tr. 74-75).

Thus, although the record includes evidence of a severe lung impairment, there is no objective medical evidence that shows the impairment imposed any functional environmental limitations on plaintiff. Nor do plaintiff's own allegations support a finding that he suffers any debilitating symptoms related to a breathing impairment. As stated by the ALJ, plaintiff alleged in his disability application that he is disabled due to achalasia, which causes him to suffer chronic pain. (Tr. 21, citing Tr. 232-233). Plaintiff did not list any breathing impairment in the application. At the ALJ hearing, plaintiff testified in response to questioning by the ALJ that he is no longer able to work because he has suffered constant, chronic pain on the left side of the abdomen since his 2007 surgery, which he believes is caused by scar tissue, and which he rated as a "6" to "10" on a 10-point scale. (Tr. 45-46). Plaintiff did not testify that he suffers from shortness of breath or a breathing impairment. (Tr. 37-55). To the contrary, when the ALJ asked plaintiff if had problems other than his abdominal pain that he thought affected his ability to work, plaintiff responded: "No, that's it." (Tr. 45). In response to questioning by the ALJ, plaintiff described his restrictions as follows: his sitting tolerance is 20 to 25 minutes, he can lift 20 pounds, and he has no difficulty with standing, walking or climbing stairs. (Tr. 48-49). Plaintiff gave no indication that any of these activities are affected by shortness of breath or any

11

other lung symptoms.[5]   (Tr. 48-49).

It is the ALJ's function to determine a plaintiff's RFC based on the record as a whole. 20 C.F.R. § 404.1546(c).   Here, the ALJ's decision to not include any work-related environmental restrictions in the RFC finding is substantially supported by the evidence of record.   This evidence includes the assessments of the treating, examining and reviewing physicians of record, none of whom imposed any such restrictions, as well as plaintiff's subjective reports of symptoms and testimony at the ALJ hearing.   Plaintiff's first assignment of error should be overruled.

**2.   The ALJ's credibility finding is entitled to deference.**

Plaintiff alleges as his second assignment of error that the ALJ improperly assessed his credibility, which led to an erroneous RFC finding.   Plaintiff contends that the ALJ erred by discounting his reports of pain caused by adhesions on the ground the adhesions are unexplained by imaging studies; by finding that plaintiff had undergone only "conservative" treatment for his pain; and by placing undue emphasis on plaintiff's activities of daily living.   (Doc. 14 at 7-10; Doc. 22 at 2-3).   The Commissioner contends that the ALJ properly found plaintiff's credibility

---

[5] Plaintiff altered his testimony somewhat as follows in response to questioning by his representative:
   Rep.: Gerry, we discussed this.   Now when you say you're able to walk, what do you mean specifically?
   How far can you walk?
   Plaintiff:  I don't know.   I mean I've never really checked it.   I mean - -
   Rep.:   Well if you can walk, and lift, and stuff, then you know, that's [] evidence of pretty good
   functioning.   What I'm trying to get at is, you know - - we discussed this, looked at the record, and if you
   don't have any physical limitations, you're not going to get very far with a case like this.   Now it was my
   understanding that you said to me previously that you could walk for half a block, or maybe your wife said
   that to me.   You can walk a half a block but not much further?
   Plaintiff:   Yeah.
   Rep.: Do you stand/rest, or do you have to catch your breath, or what?
   Plaintiff:   Yeah, I have to catch my breath and rest.
(Tr. 52-53).

to be suspect for a number of valid reasons which are substantially supported by the record. (Doc. 19 at 5-8).

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability. . . ." 42 U.S.C. § 423(d)(5)(A). Subjective complaints are evaluated under the standard set forth in *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. *Id.* at 853. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id.*

In addition to the objective medical evidence, the Commissioner must consider the opinions and statements of plaintiff's doctors. *Felisky*, 35 F.3d at 1040. Additional specific factors relevant to plaintiff's allegations of pain include his daily activities; the location, duration,

13

frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes to alleviate his pain or other symptoms; treatment other than medication plaintiff has received for relief of his pain; and any measures the plaintiff uses to relieve his pain. *Id*. at 1039-40; 20 C.F.R. § 404.1529(c). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish he is disabled, *Duncan,* 801 F.2d at 853, statements about his pain or other symptoms are not sufficient to prove his disability. 20 C.F.R. § 404.1529(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id*.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. (Tr. 22). The ALJ's credibility determination is substantially supported by the record and is entitled to deference. Contrary to plaintiff's allegation, the ALJ made extensive findings regarding plaintiff's credibility in connection with his determination that plaintiff retained the RFC to perform a reduced range of light work with nonexertional restrictions. (*See* Tr. 20). The ALJ reasonably determined that plaintiff's complaints of debilitating pain were not supported by the record evidence, including imaging studies showing no acute abnormalities that would explain plaintiff's pain. (Tr. 22). Plaintiff challenges the ALJ's reliance on the lack of positive imaging results to discount his credibility and contends that the ALJ failed to consider

14

that plaintiff has had multiple and extensive abdominal and chest surgeries, which have caused

scar tissue (adhesions) to form. (Doc. 14 at 7-8, citing Tr. 359-61). Plaintiff's counsel relies on

informational material from outside the record to argue that adhesions are not visible on

radiographic imaging, and it is unreasonable and illogical to conclude that plaintiff does not have

adhesions which cause him pain as a result of his numerous abdominal surgeries and a

thoracotomy. (*Id.* at 8). This general informational material is not acceptable evidence of

plaintiff's pain, which must consist of "objective medical evidence" of an underlying medical

condition, together with either (1) "objective medical evidence" which "confirms the severity of

the alleged pain arising from the condition," or (2) evidence showing that the "objectively

established medical condition is of such severity that it can reasonably be expected to produce

the alleged disabling pain." *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.

1997) (quoting *Felisky,* 35 F.3d at 1038-39) (quoting *Duncan,* 801 F.2d at 853); 20 C.F.R. §

404.1529(a)). Plaintiff does not cite any such objective medical evidence in the record that

shows his chronic pain is attributable to adhesions. No medical source of record opined that

plaintiff suffers from chronic pain due to adhesions. The progress notes of plaintiff's primary

care physician, Dr. Brockman, include a notation that plaintiff came to his office to get short term

disability paperwork for "[increased] pain in abdomen due to scar tissue," and that plaintiff was

to have a spine stimulator implanted on September 4, 2009 for pain control. (Tr. 594).

However, there is no indication that Dr. Brockman, who is not a specialist in gastroenterology,

examined plaintiff on that date or diagnosed adhesions. Further, the medical expert, Dr.

Maimon, testified that plaintiff's pain management specialist, Dr. Kendall Hansen, M.D.,

"seem[ed] to think [plaintiff's] pains are coming from the surgical scars, in part. . . ." (Tr. 69).

15

However, Dr. Maimon testified that scarring from the types of surgeries plaintiff has undergone would not normally lead to the pain plaintiff alleged and that the etiology of plaintiff's pain was unclear. (Tr. 63-64). Absent evidence as to the etiology of plaintiff's pain, it was not unreasonable for the ALJ to rely on a lack of positive results for the diagnostic imaging tests ordered by plaintiff's physicians to discount plaintiff's complaints of disabling pain.

Further, the ALJ reasonably relied on examination findings that were inconsistent with plaintiff's allegations of disabling pain to find plaintiff's complaints were not fully credible and that he could perform a reduced range of light work. (Tr. 17-18). Examination findings showed that plaintiff exhibited normal range of motion and muscle strength (Tr. 925-32- Dr. Bailey's 11/09 consultative examination findings), and plaintiff's treating physician, Dr. Brockman, found that plaintiff could walk for an unlimited amount of time. (Tr. 23). The ALJ was entitled to rely on the lack of objective findings such as muscle weakness and restricted range of motion to find that plaintiff's complaints of severe disabling pain were not fully credible. (Tr. 23). *See Jones v. Secretary, Health and Human Services*, 945 F.2d 1365, 1369-1370 (6th Cir. 1991) (reliable objective evidence of pain includes medical evidence of muscle atrophy and reduced joint motion and motor disruption).

The ALJ reasonably relied on other factors that he found were inconsistent with plaintiff's allegations of disabling pain to find plaintiff's complaints were not fully credible. (Tr. 23). The record evidence substantially supports the ALJ's finding that plaintiff's allegations of debilitating pain and symptoms were inconsistent with his reported level of daily activity, which the ALJ found to be "fairly significant." (*Id.*). *See Blacha v. Secretary of Health and Human Servs.,* 927 F.2d 228, 231 (6th Cir. 1990) (the ALJ may consider the plaintiff's household

16

and social activities in evaluating the plaintiff's credibility). These activities included doing the household cooking, helping out with household chores, spending time with family and friends, going fishing, and working on cars. (Tr. 1110, 1111, 1113). Further, the ALJ was entitled to rely on pain management treatment notes dated April 2010, which indicated plaintiff was not restricted in his ability to perform activities of daily living, to find that plaintiff was not fully credible. (Tr. 23, citing Tr. 860). In addition, the ALJ reasonably relied on evidence showing that plaintiff worked for several years prior to his alleged onset date despite reporting abdominal pain and related issues; yet, there is no indication that his pain significantly worsened after the alleged disability onset date. (Tr. 23).

Plaintiff alleges that "the ALJ's perspective on [his] activities of daily living was inaccurate. . . ." (Doc. 14 at 10). Plaintiff contends that his condition has worsened over time and his testimony shows he has become more functionally limited as his condition has progressed, so that his testimony at the ALJ hearing describing much more limited activities than reported earlier in the record "is not automatically inconsistent" with those earlier reports. (*Id.*). However, the record does not support plaintiff's contention that the ALJ mischaracterized his level of functioning. Plaintiff reported to the consultative examining psychologist, Dr. Jeanne Spadafora, Ph.D., in July 2010 that he "still has friends that he goes fishing [with], work[s] on cars [with] and hang[s] out [with]." (Tr. 1110). He also reported to Dr. Spadafora that he "goes fishing" with his father once a month and "goes out to eat" with his family. (Tr. 1111). Plaintiff stated at that time that he "helps his wife do the cleaning. He does the cooking. They do the grocery shopping together." (Tr. 1113). Dr. Spadafora reported that plaintiff "continued to have friends that he does things [] like fishing and visiting with. . . ." (*Id.*).

17

In contrast, plaintiff testified at the ALJ hearing in July 2011 that he is much more limited than he had represented to Dr. Spadafora. (Tr. 50-51). Plaintiff testified that he drives and takes care of his personal grooming, but he does not do the grocery shopping, dishes, laundry, vacuuming, sweeping, or yard work; he occasionally cooks; and he does not take out the garbage. (Tr. 50-51). Plaintiff simply responded "No" without further explanation when the ALJ asked, "Do you have any recreational activities, any hobbies that you do?" (Tr. 50). When the ALJ asked plaintiff how he spends a typical day, plaintiff answered, "Just sit around, watch TV." (Tr. 50). Plaintiff contends in the Statement of Errors that he attempted to explain to the ALJ at the hearing that "fishing and working on cars were his old hobbies, and [] he had not been able to engage in those activities for a long time." (Id., citing Tr. 51-52) (emphasis in original). Yet, the cited portions of the transcript do not bear out plaintiff's contention and fail to show that plaintiff attempted to draw any distinction between his past and present levels of activity when testifying at the ALJ hearing.[6] Nor does plaintiff point to any evidence in the record to demonstrate that his condition worsened and became more debilitating over time, and particularly after the consultative evaluation by Dr. Spadafora. Thus, plaintiff has not shown that the ALJ unreasonably discredited his allegations of disabling pain on the ground his activities of daily living disclosed a level of functioning that was not commensurate with his reported level of pain. (Tr. 23).

The ALJ also discounted plaintiff's credibility because he determined that the treatment

---

[6] Plaintiff's counsel further attempts to explain any discrepancy between plaintiff's testimony at the ALJ hearing and reports of daily activities he provided in disability questionnaires by alleging that "the questions written in the state-agency questionnaires are somewhat ambiguous: they ask what a person's hobbies are, but the questions do not make clear that a claimant is supposed to specify what hobbies the claimant still engages in." (Doc. 14 at 10). Counsel's argument is disingenuous as the word "are" clearly refers to the present.

plaintiff has received has consisted of "conservative measures that are not indicative of total disability." (*Id*.). Plaintiff alleges that the ALJ inaccurately characterized the nature of his treatment, which has consisted of medications, epidural steroid injections, neuroma injections, and a trial spinal cord stimulator, and plaintiff alleges that he continues to require frequent visits to the emergency room to treat his severe pain despite these measures. (Doc. 14 at 9, citing Tr. 460, 496, 715-29, 938-78). However, the record does not show that plaintiff has continued to require trips to the emergency room for severe abdominal pain. The cited records include three emergency room visits for flare-ups of abdominal pain, only two of which were for exacerbation of abdominal pain following implantation of the stimulator. (*See* Tr. 460- 12/08 diagnosis of superficial pain related mainly to neuropathy; Tr. 954-964- 11/09 emergency room visit for exacerbation of abdominal pain; Tr. 938-953- 12/09 emergency room visit for flare-up of chronic abdominal pain; plaintiff was instructed to fill prescription he had previously been prescribed but had not filled and to take as instructed (Tr. 941)). The other hospital records cited by plaintiff concern post-procedure issues and matters other than abdominal pain. (*See* Tr. 715-29- 9/09 emergency room visit for an acute fever and back pain following implantation of the spinal stimulator; Tr. 968-72- 10/09 regular outpatient visit for abdomen/pelvic CT scan to find cause of left upper quadrant abdominal pain, with no cause identified (Tr. 972); Tr. 973-78- 10/09 emergency room visit for back pain; finding "abdomen completely benign" (Tr. 976); Tr. 965-67- 11/09 regular outpatient visit/barium swallow; Tr. 496- 4/10 pain management center post-procedure visit). There is no indication that plaintiff has visited the emergency room for a flare-up of his abdominal pain since December 2009, shortly after the spinal stimulator was implanted. Beyond the few visits to the emergency room for exacerbation of his abdominal

19

pain, plaintiff's pain has been treated with medication, the spinal stimulator, and injections which have provided 70% to 80% temporary relief. (Tr. 68-70). Regardless of whether these treatment methods are accurately characterized as "conservative" in nature, the ALJ thoroughly considered plaintiff's treatment history and the remaining factors pertinent to plaintiff's credibility (Tr. 21-23), and his finding that plaintiff was not fully credible is supported by the evidence of record.

Thus, a review of the record shows that the ALJ properly applied the two-part *Duncan* standard in evaluating plaintiff's subjective complaints of pain and other purportedly disabling symptoms. The ALJ's credibility findings may not be disturbed absent a "compelling reason." *Ritchie v. Commissioner of Social Sec.*, No. 12-2405, 2013 WL 5496007, at *3 (6th Cir. Oct. 4, 2013). Here, the ALJ conducted a thorough evaluation of plaintiff's complaints in light of the objective medical evidence of record, his reported daily activities, and other pertinent factors, and the ALJ articulated his reasons for finding plaintiff not credible. Although there is ample evidence to support a finding that plaintiff suffers from abdominal pain, substantial evidence supports the ALJ's determination based on the medical and other evidence of record that plaintiff's complaints of debilitating pain and other symptoms are not fully credible. This evidence includes the assessments of the treating, examining and reviewing physicians of record and plaintiff's own assessment of his abilities and limitations. No "compelling" reason exists to disturb the credibility findings by the ALJ in this matter. *Id*.

Accordingly, plaintiff's second assignment of error should be overruled.

20

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be AFFIRMED and this matter be CLOSED on the docket of the Court.

Date: 12/9/13

Karen L. Litkovitz
United States Magistrate Judge

21

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GERRY TOMLIN,                                          Case No. 1:12-cv-957
    Plaintiff,                                   Dlott, J.
                                           Litkovitz, M.J.

    vs


COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the

Report and Recommendation is based in whole or in part upon matters occurring on the record at

an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or

such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless

the assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

22